UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBIN DANTZLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:09CV794 DJS |
| ) | (TIA) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This matter is before the Court under 42 U.S.C. § 1383(c)(3) for judicial review of the denial of Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act.  The case was referred to the undersigned pursuant to 28 U.S.C. § 636(b).

## **I.  Procedural History**

On September 22, 1998, an ALJ awarded Plaintiff Supplemental Security Income Benefits ("SSI") as a child beginning October 1, 1994 due to speech and language delays and borderline intellectual functioning.  (Tr. 115-24) On June 12, 2007, the Social Security Administration informed Plaintiff that her benefits would cease because, after additional review, she no longer qualified for SSI as of June 1, 2007.  (Tr. 547-550) In a decision dated March 24, 2008, a hearing officer determined that Plaintiff had a mood disorder which restricted the complexity of her tasks and social interactions, deeming the impairment severe.  However, Plaintiff's impairment did not meet the criteria of a listed impairment.  While Plaintiff could not perform skilled or detailed job tasks, the hearing officer found that she was able to sustain simple, 1-2 step tasks with minimal interpersonal contact.  Thus, the hearing officer concluded that Plaintiff could perform unskilled jobs in the sedentary to medium

ranges and was therefore not disabled. (Tr. 582-88)

After this determination, the Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 2, 2008. (Tr. 12, 728-80) On January 30, 2009, the ALJ determined that Plaintiff's disability ended on June 1, 2007 and that she had not become disabled again since that date. (Tr. 9-19) The Appeals Council denied Plaintiff's Request for Review on April 23, 2009. (Tr. 3-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff testified, as did Vocational Expert, Deloris E. Gonzalez. Plaintiff stated that she was 20 years old and lived in a house with her mother, sister, and twin brother. Plaintiff graduated from high school in 2007, after attending special education and regular classes. She testified that the work was harder in the regular classes. Plaintiff was 5 feet, 7 inches and weighed 180 pounds. Plaintiff stated that she read magazines a little but that she had difficulty reading big words. She was able to do simple addition and subtraction. (Tr. 728-43)

Plaintiff also testified that she did not grocery shop. She had no income, and her mother paid all the bills. Plaintiff worked at IHOP for three days, and she stated that she continued to watch her niece at her grandmother's house. Plaintiff testified that she baby-sat 5 days a week for approximately 10 hours a day. She received $25 a week. Plaintiff stated that her job as a server at IHOP ended when management told her to leave because she was unable to get along with other people. In addition, Plaintiff was unable to put food orders into the computer or remember which table to take the food. (Tr. 743-49)

2

Plaintiff further stated that her right knee was painful when she bent it. A doctor gave her pills for the pain. Her knee bothered her every other day, and she did leg exercises to try to ease the pain. Although Plaintiff did not know how much weight she could lift, she testified that she lifted her one-year-old niece, milk, and laundry. In addition, Plaintiff was on the track team in eleventh and twelfth grade and ran the 100 meter. Her training included running, lifting weights, and doing push-ups. (Tr. 750-54)

Plaintiff testified that she received psychiatric treatment. She had previously attempted suicide, and she had done some self mutilation. Plaintiff took Abilify for her mental impairments. She acknowledged that she stopped taking the medication for a period of time but that she improved with the medication. Plaintiff testified that when she took the medication, she did not hear things. She also stated that her depression stemmed from being molested by her uncle when she was a child. In addition, Plaintiff testified to a recent incident involving her sister's husband, after which she went to the hospital. (Tr. 754-58)

Plaintiff denied drinking alcohol, smoking, or using illegal drugs. She did not have a driver's license and only drove a car when practicing. Plaintiff and her family used public transportation to travel. Plaintiff stated that she was able to help with housework. She washed dishes, took out trash, and cooked. When watching her niece, Plaintiff fed her, and Plaintiff's grandmother supervised and helped. Plaintiff further testified that she washed the dishes by hands and did the laundry. She did not vacuum, but she swept the house. Her brother did the yard work. Plaintiff's mom picked out Plaintiff's clothes, but Plaintiff stated that she could bathe and dress herself. She had no problems walking, standing, or sitting, or with using her arms or hands. (Tr. 758-63)

Plaintiff testified that she never left the house alone because she was scared something might

3

happen. She previously had friends but testified that she did not have any friends at the time of the hearing because they stopped talking to her 2 years ago. Other than babysitting, Plaintiff spent her time watching TV. She did not go to the movies or to church. Although she was interested in driving, Plaintiff did not have a driver's license. Plaintiff testified that she was nervous about going out in public, specifically about somebody touching her. Plaintiff further stated that marks on her cheek stemmed from her cutting her face when she was seventeen years old. She last cut herself two days before the hearing because she was mad, depressed, and crying. Plaintiff used a razor to cut her arm. Plaintiff acknowledged that she wanted to harm herself when she did not take her medication. Plaintiff also remarked that she had trouble staying on focused and remembering things. (Tr. 763-72)

The Vocational Expert ("VE"), Deloris Alvera Gonzalez also testified at the hearing. The ALJ proffered a hypothetical question, asking the VE to assume an individual with Plaintiff's education, training, and work experience, who could perform the exertional level of medium work. In addition, this individual would have the following limitations: occasional stooping, kneeling, crouching, and crawling; understanding, remembering, and carrying out at least simple, non-detailed tasks; demonstrating adequate judgment to make simple work decisions; appropriately responding to supervisors and co-workers in a task-oriented setting with casual and infrequent contact with others; and performing work at a normal pace without production quotas. (Tr. 775-76)

The ALJ then asked whether jobs existed which such individual could perform. The VE stated that the hypothetical person could work as a cleaner, ticket taker, and sticker. These positions were sedentary to light and unskilled. If the individual was further limited to only occasional contact with a supervisor and coworkers, such person could still perform the aforementioned jobs. (Tr. 776-77)

4

If the ALJ added the limitation that the individual could maintain concentration and attention in 2-hour segments during an 8-hour work day, she could still perform the jobs. The VE testified that a worker is usually allowed to work for two hours with short breaks in between. If, however, the hypothetical individual required daily reminders of the simple instructions and detailed tasks, such person would not be able to work in a competitive setting unless accommodated by a job coach. (Tr. 777-78)

Plaintiff's attorney also questioned the VE, altering the limitations to include a person with documented borderline intellectual functioning; a person that cannot leave home alone without developing feelings of fears and anxiety causing significant functional interference; a person that could not follow simple instructions given in a work environment; and a person that could only function with constant supervision and behavior monitoring. The VE answered that such person was not capable of competitive employment. (Tr. 778-79)

### III. Medical Evidence

Plaintiff's most recent IEP, completed for the St. Louis City Public Schools on October 17, 2006, indicated that Plaintiff's educational disability was Specific Learning Disability in Basic Reading, Written Expression, and Math Calculation. Plaintiff was also language impaired in semantics and syntax. The IEP recognized that Plaintiff had made improvements in her writing and vocabulary skills, as well as demonstrated an increase in school appropriate behavior. The IEP team determined that Plaintiff would not participate in the regular education environment 100% of the time because she would benefit from language therapy and job skills instruction in the special education setting. Plaintiff was placed outside the general class 21-60% of the time. Plaintiff reported to the team that she planned to investigate careers in the health field and desired to attend a two year

5

community college and live independently. (Tr. 651-66)

On May 25, 2007, Plaintiff underwent a psychological evaluation at the request of the Missouri Social Security Disability Determinations Unit. Plaintiff reported that she had just graduated from high school, having received special education services; she was healthy and currently took no medications; and she had never held or applied for a job. The psychologist, Alison Burner, M.A., noted that Plaintiff's grooming and hygiene were above average. Her affect was appropriate, and her speech was clear. She exhibited no psychomotor agitation. The results of a WAIS-III exam revealed a full scale I.Q. of 81; a verbal I.Q. of 82, and a performance I.Q. of 84. Dr. Burner noted that her I.Q. fell within th low average range of intellectual functioning. Dr. Burner opined that Plaintiff did not appear to have a cognitive deficiency which would preclude obtaining and maintaining gainful employment. However, she would not be able to manage her own benefits due to her young age. (Tr. 686-88)

A Psychiatric Review Technique form completed on June 7, 2007 by Judith A. McGee, Ph.D., revealed no medically determinable impairment. (Tr. 552-62) In August of 2007, Plaintiff presented to the Family Medicine of St. Louis Office. The assessments included depression and non-inflammatory acne. Plaintiff was prescribed Zoloft. (Tr. 683-84)

Progress Notes from the Hopewell Center on December 18, 2007 revealed that Plaintiff had been admitted to St. Anthony's Hospital for suicidal thoughts. The examining physician noted that Plaintiff's Primary Care Physician had referred Plaintiff due to depression and stress. Plaintiff was diagnosed with major depressive disorder, recurrent with psychotic features, pain in her right knee; family issues; and a GAF of 50. She was prescribed Zoloft, Effexor, and Abilify. (Tr. 669-71)

A Mental Residual Functional Capacity assessment completed by Kyle W. DeVore, Ph.D.,

on January 9, 2008 revealed moderate limitations in Plaintiff's ability to understand and remember detailed instructions; ability to carry out detailed instructions; and ability to maintain attention and concentration for extended periods. Plaintiff was not significantly limited in all other categories. Dr. DeVore concluded that Plaintiff was capable of understanding, remembering, and carrying out simple 1-2 step instructions. (Tr. 530-32)

Dr. DeVore also completed a Psychiatric Review Technique form on that same date. He found that an RFC assessment was necessary due to Organic Mental Disorders and Affective Disorders. Plaintiff's Organic Mental Disorders stemmed from a Learning Disorder, and her Affective Disorder was due to Depression. Dr. DeVore assessed mild limitations in Plaintiff's Restriction of Activities of Daily Living and Difficulties in Maintaining Social Functioning. With regard to Difficulties in Maintaining Concentration, Persistence, or Pace, Dr. DeVore found a moderate degree of limitation. Dr. DeVore concluded that Plaintiff was capable of performing at least simple instructions in the national economy in agreement with the June 2007 cessation of benefits. (Tr. 533-43)

Hopewell Center Progress Notes from March 2008 through July 2008 revealed improvement with medication. (Tr. 712-13) However, Plaintiff was hospitalized with the State of Missouri, Department of Mental Health, from August 9, 2008 to August 13, 2008 for suicidal ideations and worsening depressive symptoms after running into her uncle and after her sister's husband made sexual advances toward her. Plaintiff's discharge diagnoses included major depressive disorder, severe without psychosis; superficial laceration on left wrist; poor coping skills and unemployment; and a GAF score of 55. She was prescribed Abilify and Zoloft and released in stable condition. Dr. Devna Rastogi recommended that Plaintiff continue her medications and follow up at the Hopewell

7

Center. (Tr. 700-701)

Plaintiff followed up with the Hopewell Center from September 2008 through December 2008. On September 25, 2008, Plaintiff reported no suicidal thoughts or depressed mood. However, on December 1, 2008, she reported that she discontinued taking her medication and began cutting herself again. (Tr. 709-11)

### IV. The ALJ's Determination

In a decision dated January 30, 2009, the ALJ found that Plaintiff reached the age of 18 on February 13, 2006 and was found no longer disabled as of June 1, 2007. The ALJ further determined that, since June 1, 2007, Plaintiff had a severe combination of impairments including borderline intellectual functioning, attention deficit hyperactivity disorder, affective mood disorder, and a learning disorder. However, she did not have an impairment or combination of impairments that met or medically equaled one listed in 20 C.F.R. Part 404, Appendix 1. (Tr. 14-16)

In addition, the ALJ found that Plaitniff had the residual functional capacity ("RFC") to perform a full range of medium work. However, Plaintiff also possessed the following nonexertional limitations: she could only occasionally stoop kneel, crouch, and crawl; she could understand, remember, and carry out only simple instructions; she could maintain attention and concentration during two-hour segments in an eight-hour work day; she could have only occasional contact with co-workers and supervisors, with infrequent contact with the general public; and she could perform work at a normal pace without production quotas. The ALJ determined that Plaintiff was a younger individual with at least a high school education and no past relevant work. In light of her age, education, work experience, and RFC, the ALJ found that Plaintiff was able to perform a significant number of jobs in the national economy. Therefore, the ALJ concluded that Plaintiff's disability

8

ended on June 1, 2007 and that she had not become disabled again since that date. (Tr. 16-19)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that she is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d

---

[1]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## VI.  Discussion

In her Brief in Support of the Complaint, the Plaintiff asserts that the ALJ failed to properly consider Plaintiff's medical records in determining her RFC. In addition, Plaintiff argues that the hypothetical question to the VE did not precisely describe Plaintiff's impairments. The Defendant, on the other hand, maintains that the ALJ properly evaluated the medical records, along with the other evidence contained in the record. Further, Defendant asserts that the ALJ posed a proper hypothetical question to the VE. The undersigned agrees with Defendant that the ALJ did not err in his evaluation of the medical evidence, nor was the hypothetical question to the VE improper.

### A.  The ALJ's RFC Assessment

Plaintiff first contends that the RFC findings by the ALJ failed to take into account treatment medical records. Specifically, Plaintiff asserts that the ALJ failed to recognize Plaintiff's admission to St. Anthony's Hospital and the Metropolitan Psychiatric Center, along with August 2007 records from Family Medicine and Hopewell Center records from December 2007 to December 2008. Plaintiff argues that because the ALJ did not discuss these records, the RFC finding is not supported by substantial evidence. The Defendant maintains that the ALJ's RFC determination is based on all of the evidence in the record.

Residual Functional Capacity (RFC) is a medical question, and the ALJ's assessment must be supported by substantial evidence. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (citations omitted). The ALJ has the responsibility of determining a claimant's RFC "'based on all the relevant

evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

"A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). However, "an ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted).

The undersigned finds that the ALJ's RFC analysis and finding is supported by substantial evidence. The ALJ's determination reflects that he considered all the records from the Hopewell Center, including allegations of depression and use of Zoloft. The ALJ also discussed Plaintiff's hospitalization at the Metropolitan St. Louis Psychiatric Center. (Tr. 14-15) The ALJ noted that Plaintiff's condition improved during her hospital stay, and she was released with medication in stable condition.[2] (Tr. 15, 700-01) The Hopewell Center notes also demonstrate improvement with medication. (Tr. 709-13)

Similarly, notes from consulting psychologists and psychiatrists mirror these treatment notes. Dr. Burner noted that, although Plaintiff's I.Q. fell within the low average range of intellectual functioning, Plaintiff was not precluded from obtaining and maintaining gainful employment. (Tr.

---

[2] Plaintiff's GAF upon discharge was 55. (Tr. 701) A GAF score of 51 to 60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).

686-88) Dr. Devore opined that Plaintiff could perform at least simple instructions in the national economy. (Tr. 543)

The ALJ correctly found that the notes from Plaintiff's treating physicians do not reflect an inability to function in a work setting. The fact that no examining physician found that Plaintiff was disabled or unable to perform work is significant. Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000). Indeed, Plaintiff demonstrated improvement with medication and continuing therapy. An impairment that can be controlled by treatment or medication cannot be considered disabling. Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (citations omitted). Further, the opinions of the consulting doctors are consistent with the diagnoses rendered by Plaintiff's treating physicians at the Hopewell Center. In addition, Plaintiff graduated from high school, babysat her niece full-time, and performed household chores. These activities demonstrate Plaintiff's ability to work on a daily basis in the national economy. Young, 221 F.3d at 1069. Thus, the undersigned finds that substantial evidence based on the record as a whole supports the ALJ's RFC determination.

### B. Hypothetical to the VE

Plaintiff also argues that the hypothetical question posed by the ALJ to the VE failed to include all of Plaintiff's limitations, and, therefore, the VE's response did not constitute substantial evidence. The Defendant responds that hypothetical question properly included only those impairments and restrictions that the ALJ found credible.

The undersigned agrees that the ALJ posed a proper hypothetical question to the VE and that the VE's testimony that Plaintiff could perform work was substantial evidence in support of the ALJ's determination. "A hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence I the record and accepted as true by the ALJ.'" Guilliams v. Barnhart, 393

F.3d 798, 804 (8th Cir. 2005) (quoting Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001)). Further, where substantial evidence supports an ALJ's finding that a plaintiff's complaints were not credible, the ALJ may properly exclude those complaints from the hypothetical question. Id.

In the instant case, the ALJ included only those impairments and limitations that he found credible. The ALJ asked the VE to assume an individual with Plaintiff's education, training, and work experience, who could work at a medium exertional level. (Tr. 775) The ALJ also included those credible physical and mental limitations, such as performing only simple tasks and limited contact with supervisors, coworkers, and others, as well as a 2-hour attention span with short breaks during an 8-hour workday. (Tr. 775-78) These limitations are consistent with medical and other evidence in the record.

Plaintiff's attorney raised the additional limitations of borderline intellectual functioning, inability to leave home without fear and anxiety, inability to follow simple instructions, and inability to function without constant supervision. However, as stated above, the evidence does not support these limitations, and the ALJ properly discredited Plaintiff's allegations. As such the ALJ was not required to include the limitations in his hypothetical question to the VE. Therefore, the undersigned finds that "[t]he hypothetical was sufficient because it represented a valid assessment of [Plaintiff's] . . . limitations consistent with the evidence in the record." Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). Because the hypothetical question properly set forth Plaintiff's limitations, the VE's testimony constituted substantial evidence upon which the ALJ could properly rely in determining that Plaintiff was not disabled. Id.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the final decision of the Commissioner denying

social security benefits be **AFFIRMED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

      /s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  8th  day of July, 2010.